## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) LINDA AUSTIN and )
(2) MARTIN AUSTIN, )
  )
     Plaintiffs, )
  )
v. )
  ) Case No.
(1) STATE FARM FIRE AND CASUALTY )
COMPANY and )
(2) REBECCA LAFEVERS INSURANCE )
AGENCY, INC., )
  )
     Defendants. )

## NOTICE OF REMOVAL

1.    State Farm Fire and Casualty Company ("State Farm") is Defendant in a civil action brought against it in the District Court of Oklahoma County, State of Oklahoma, on September 11, 2025, and titled *Linda Austin and Martin Austin v. State Farm Fire and Casualty Company and Rebecca LaFevers Insurance Agency, Inc.*, Case No. CJ-2025-6571.

2.    Upon information and belief, at the time of the filing of this action and at the present time, Plaintiffs Linda Austin and Martin Austin are and were residents and citizens of the State of Oklahoma.

3.    At the time of the filing of this action and at the present time, State Farm was and is a foreign corporation, duly organized and existing under the laws of the State of Illinois and no other state, with its principal place of business in Illinois; it is not a citizen of Oklahoma.

4.      Defendant Rebecca LaFevers Insurance Agency, Inc. ("LaFevers Agency") is a corporation organized under the laws of the State of Oklahoma.

5.      Even though the LaFevers Agency is a resident of the State of Oklahoma, its citizenship is immaterial because it is a fraudulently joined party against whom Plaintiffs do not have "any possibility of recovery." *Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *1 (W.D. Okla. Apr. 8, 2014) (internal quotation marks omitted). Only ***properly joined*** defendants are material for diversity analysis. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest ***properly joined*** and served as defendants is a citizen of the State in which such action is brought." (emphasis added)); 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been ***properly joined*** and served must join in or consent to the removal of the action." (emphasis added)). Therefore, as set forth below and apparent from the Petition, this Court should disregard the alleged citizenship of the LaFevers Agency for purposes of diversity. *Smith*, 2014 WL 1382488 at *4.

6.      As the United States Supreme Court has recognized for well over a century, the right of removal "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. *Gellner v. Progressive N.*

*Ins. Co.*, No. 21-CV-0401-CVE-JFJ, 2021 WL 5789146, at *2 (N.D. Okla. Dec. 7, 2021) (citing *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006)). Both grounds exist here.

7.      The LaFevers Agency is not properly joined because there is no "reasonable basis to believe the plaintiff[s] might succeed in at least one claim against [it]." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006). Plaintiffs have also shown fraudulent joinder in the pleading of jurisdictional facts by, among other things, using the same petition, relied upon by their counsel in many other cases against State Farm, that contains allegations that are implausibly the same in every case and have no application to the actual facts; thus, they were "manufactured simply in an effort to avoid removal to federal court." *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE, 2023 WL 11883985, at *2 (W.D. Okla. Jan. 26, 2023) (granting jurisdictional discovery prior to resolution of motion to remand noting that allegations in petitions filed by Plaintiffs' counsel were "identical, cookie-cutter allegations of fact in circumstances where no such identical conduct could plausibly be expected"); *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE, 2023 WL 11883977, at **1-3 (W.D. Okla. Aug. 7, 2023) (denying motion to remand finding actual fraud in the pleading of jurisdictional facts); *Marino v. State Farm Fire & Cas. Co.*, No. CIV-22-0885-HE, 2023 WL 11915691, at **1-3 (W.D. Okla. Aug. 7, 2023) (same); *Baltasar v. State Farm Fire & Cas. Co.*, No. CIV-22-0928-HE, 2023 WL 11883978, at **1-2 (W.D. Okla. Aug. 8, 2023) (same).

8.      Plaintiffs purport to sue the LaFevers Agency for negligent procurement of insurance and constructive fraud and negligent misrepresentation based on representations

allegedly implied by the sale of their policy. Neither claim has a "basis in the alleged facts." *Nerad*, 203 F. App'x at 913.

**Plaintiffs Cannot Possibly State a Claim Against the LaFevers Agency for Negligent Procurement Because Plaintiffs Admittedly Received the Policy They Requested and the LaFevers Agency Cannot Be the Cause of the Injury Alleged Because It Arises Only From State Farm's Claim Decision**

9.        Plaintiffs' claim for negligent procurement cannot possibly succeed because they received the policy they pled that they requested and no act by the LaFevers Agency caused the damages for which they complain. Oklahoma law recognizes a cause of action for negligent procurement against an insurance agent under limited circumstances. *See Swickey v. Silvey Cos.*, 979 P.2d 266, 268 (Okla. Civ. App. 1999). "An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." *Id.* at 269. Only if "***by the agent's fault***, insurance ***is not procured as promised and the insured suffers a loss***" as a result can an agent be liable in tort for breaching this duty of care. *Id.* (emphasis added).

10.        According to the Petition, "Plaintiffs specifically requested Agent obtain a replacement cost policy that would provide ***full replacement cost coverage***," the LaFevers Agency was "aware that the Plaintiffs required full replacement cost coverage under a policy that would fully replace the Insured Property's roof in the event of a tornado, windstorm, and/or hailstorm loss, without exclusion of any weather-related losses," and "[n]either Agent nor State Farm ever disclosed to Plaintiffs that the Insured Property was ineligible under State Farm's underwriting guidelines for the requested full replacement cost coverage for any reason." Pet., ¶¶ 25-26, Ex. 11. They contend that the LaFevers

Agency did not deliver on its promise because the Policy procured provided "illusory full replacement cost coverage (in that all fortuitous losses are not covered under the Policy)." *Id.* at ¶ 63(a)(i). But the Petition makes clear that it is not the Policy or any of its terms about which Plaintiffs complain; rather, Plaintiffs complain of State Farm's claim decision. Their failure to plead facts to show the LaFevers Agency did not procure "insurance … as promised" is fatal to their claim. *Swickey*, 979 P.2d at 269.

11.     Indeed, there is no doubt that Plaintiffs received the Policy they say they wanted—a policy that covers wind and hail damage at replacement cost value ("RCV"). "Replacement cost insurance provides greater coverage than an actual cash value policy and 'is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property.'" *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 538 (10th Cir. 2017) (citation omitted). "Under a replacement cost policy, the insured must actually repair or replace the damaged property in order to recover the full replacement cost; otherwise, the insured may recover only the actual cash value…. The reason for this requirement is to prevent an insured from directly profiting through the receipt of cash funds beyond the actual cash value of the loss." *Id.* (citation and internal quotations omitted). *See also Frontline Fellowship, Inc. v. Bhd. Mut. Ins. Co.*, No. CIV-21-357-PRW, 2022 WL 16856111, at *3-4 (W.D. Okla. Nov. 10, 2022) (explaining RCV policy in same manner).

12.     The Declarations to Plaintiffs' Policy show that their dwelling coverage was "A1 Replacement Cost – Similar Construction." Declarations at 2, Ex. 12. This section of the Policy provides that "until actual repair or replacement is completed, [State Farm] will

pay only the **actual cash value** of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property." Policy, § 1.a.(1), p. 18, Ex. 13. "[W]hen the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [Plaintiffs] actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less." Policy, § 1.a.(2), p. 18.

13.    In addition, **Plaintiffs admit the Policy covers wind and hail damage to the dwelling**. The Petition states that the Policy "functions like an 'all risk' policy: that is, if the policy does not expressly exclude a loss, then the policy should afford full replacement cost coverage for the loss pursuant to the loss clause. Thus, State Farm's policy affords full replacement cost coverage for the property in question for damage resulting from hail because hail damage is not expressly excluded from full replacement cost coverage." Pet., ¶ 31. Accordingly, State Farm, as Plaintiffs admit, estimated to replace the entire back slope of the roof of Plaintiffs' house, along with rooftop soft metals, and the roofs of two sheds it found were damaged in the storm. *Id.* at ¶ 40(k); State Farm Letter & Estimate, Ex. 14. It did not deny the claim for full roof replacement "by asserting pre-existing damages," as Plaintiffs' counsel allege in all of their cases against State Farm. *See id.* at ¶ 55(a)(x). The letter to Plaintiffs conveying State Farm's decision makes no mention of "pre-existing damages." State Farm Letter & Estimate, Ex. 14. *See* Order at 8-9, *Stone v. State Farm*, No. 5:25-cv-7-D (W.D. Okla. Aug. 20, 2025), ECF No. 25 ("*Stone* Order") (denying remand in case asserting same theory in part because the claim decision letter

acknowledged the insured suffered a loss and did not mention pre-existing roof damage). Had State Farm determined the storm damaged additional shingles on the roof of the home, it would have paid to replace them too. In any event, Plaintiffs do not allege they sought a policy that covered "pre-existing damage" and the LaFevers Agency failed to procure such policy. They allege they sought a policy that covered wind and hail damage, and that is the policy they received. When faced with the same allegations, this Court recently found agents were fraudulently joined to defeat federal jurisdiction, concluding the insureds (who were represented by Plaintiffs' counsel) could not possibly state a claim for negligent procurement because "[a]ccording to Plaintiffs' own allegations," they received the exact policy requested: "an all-risk replacement cost policy that provides coverage for any accidental direct physical loss, including wind and hail damage." *Porter v. State Farm*, No. CIV-25-187-R, 2025 WL 1151682, at *3 (W.D. Okla. Apr. 18, 2025). *See also Cisneros v. State Farm*, No. CIV-25-42-R, 2025 WL 1151685, at *3 (W.D. Okla. Apr. 18, 2025); *Barlow v. State Farm*, No. CIV-25-44-R, 2025 WL 1139489, at *3 (W.D. Okla. Apr. 17, 2025); *Gamble v. State Farm*, No. CIV-25-396-R, 2025 WL 1848818, at *2 (W.D. Okla. July 2, 2025); *Weichbrodt v. State Farm*, No. CIV-25-360-R, 2025 WL 1848819, at *2 (W.D. Okla. July 2, 2025); Order at 4, *Stafford v. State Farm*, No. CIV-25-00008-HE (W.D. Okla. May 27, 2025), ECF No. 25 ("*Stafford* Order") ("[I]t is completely certain, from the record, that [plaintiff] received the policy she requested—a replacement cost value policy. There are no factual allegations to show the issued policy excluded a 'weather-related loss.' Indeed, the policy covered wind and hail damage."); Order at 4, *Cline v. State Farm*, No. CIV-25-367-HE (W.D. Okla. Aug. 21, 2025), ECF No. 18 ("*Cline* Order");

Order at 5, *White v. State Farm*, No. CIV-25-561-HE (W.D. Okla. Aug. 21, 2025), ECF No. 19 ("*White* Order"); Order at 8, *Wilder v. State Farm*, No. 5:25-cv-92-D (W.D. Okla. Oct. 14, 2025), ECF No. 28 ("*Wilder* Order") (denying remand in part because "[b]y Plaintiff's own admission, [the agent] procured Plaintiff a replacement cost policy" and therefore "any arguments Plaintiff did not receive a replacement cost policy [were] unavailing"); Order at 8, *Hall v. State Farm*, No. 5:25-cv-12-JD (W.D. Okla. Oct. 14, 2025), ECF No. 33 ("*Hall* Order") (same); Order at 7-8, *Wiesman v. State Farm*, No. 5:25-cv-50-JD (W.D. Okla. Oct. 14, 2025) ("*Wiesman* Order") (same).

14.    Even if the Policy were different than requested (and it is not), the type of Policy played no role in State Farm's claim decision that a total roof replacement was not warranted and thus is not what caused Plaintiffs' alleged injury. According to their Petition, Plaintiffs' house was damaged in a windstorm on March 14, 2025, and they submitted a claim to State Farm, which sent an adjuster to inspect the property. Pet., ¶ 40(a), (c), Ex. 11. The adjuster found wind damage to the roof of the house and prepared an estimate to replace the back slope, along with rooftop soft metals, including a "pipe jack, flashing, roof vents, rain cap, etc." *Id.* at ¶ 40(k); State Farm Estimate, Ex. 14. He also found storm damage to the roofs of two sheds and estimated to replace them. State Farm Estimate, Ex. 14. After applying Plaintiffs' deductible and subtracting recoverable depreciation, $1,254.82 was paid to Plaintiffs. *Id.* at ¶ 40(l). Plaintiffs contend their "contractor provided an estimate for full roof replacements for the dwelling and two sheds." *Id.* at ¶ 40(q). The estimate totaled $23,800 and noted that the "[h]ouse roof ha[d] general wear," along with wind damage. Contractor Estimate, Ex. 15.

15.     As with all negligence claims, a required element of a negligent procurement claim is **_causation_**. Plaintiffs must show they "suffered damages flowing from the breach of the agent's duty of care." *Castens v. Conseco Life Ins. Co.*, No. 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012). The injury alleged by Plaintiffs from the conduct of the agent and State Farm is the same—failure to pay to replace their roof. The cause of that alleged injury is State Farm's finding that only the back slope was damaged, which could be replaced without replacing the entire roof. Pet., ¶ 40(k); State Farm Estimate, Ex. 14. That is, "State Farm denied the claim [for a total roof replacement] not because of the type of policy [the agent] procured, but because it determined that [Plaintiffs'] roof did not sustain a covered loss…. In short, Plaintiff[s]' claim against State Farm depends upon what damage [their] roof sustained, not the terms of [their] policy." *Steinkamp v. State Farm*, No. CIV-22-00047-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023). Thus, Plaintiffs have no claim against the LaFevers Agency for negligent procurement. *Wiesman* Order at 9-10 ("Plaintiff's damages flow from the adjuster's assessment of his property damage and State Farm's related denials, not from the type of coverage provided by the Policy."); *Hall* Order at 10 (same); *Wilder* Order at 10 (same); *Rain Drop Found. Inc. v. State Farm*, No. CIV-24-1101-D, 2025 WL 582562, at *4 (W.D. Okla. Feb. 21, 2025) (agent "procured replacement cost insurance. Plaintiff's alleged damages arose, not because of the type of insurance procured, but because State Farm refused to replace Plaintiff's roof"); *Weichbrodt*, 2025 WL 1848819 at *2 ("Plaintiff's damages flow from State Farm's allegedly improper interpretation of her policy and adjustment of her claim, not the agent's failure to procure the correct type of policy, type

of coverage, or coverage limit."); *Gamble*, 2025 WL 1848818 at *2 (same). *See also Stafford* Order at 5 ("The fact that a claim under a policy is denied, or paid at a level less than that sought by the insured, does not, without more, render the policy illusory."); *White* Order at 5; *Cline* Order at 5; *Stone* Order at 8-9 (finding insured could not possibly state a claim against agent where allegation "Plaintiff suffered a loss because of the agent's actions" was false).

16.    Plaintiffs further tie their disagreement with State Farm's claim handling practices to the agent by arguing "State Farm employs a narrow and limited definition (as well as restrictive claims handling protocols) for hail damage," which "allows State Farm adjusters to deny claims even when their loss inspection clearly shows hail damage to the insured roof." Pet., ¶ 35. They allege "State Farm's captive agents (including Agent here) are fully aware of the narrow and limited definition, this critical disclosure is concealed, and State Farm's insureds are wholly unaware of full replacement cost coverage limitation until they suffer a loss, file a claim, and receive a denial." *Id.* This complaint appears to have its genesis in the agent's alleged sale of a form insurance policy (*id.* at ¶ 14)—an innocuous fact given that all policies sold in this State must be filed with and approved by the Oklahoma Department of Insurance ("DOI"), and thus, all insurers sell form policies, examples of which are available on the DOI website. *See* Home Insurance Policies, Oklahoma Insurance Department, https://www.oid.ok.gov/consumers/insurance-basics/home-insurance-policies/ (last visited Oct. 24, 2025). Plaintiffs' Policy is State Farm Homeowners Policy HW-2136. *See* Policy, Ex. 13; Decl. of Courtney Berthelot, ¶ 3, Ex. 16.

17.    Plaintiffs allege "State Farm captive agents market, sell, procure, and bind … what they tout as ***full replacement cost*** homeowners insurance coverage to prospective insureds .... us[ing] the same insurance policy" (Pet., ¶ 14) that "functions like an 'all risk' policy: that is, if the policy does not expressly exclude a loss, then the policy should afford full replacement cost coverage for the loss pursuant to the loss clause. Thus, State Farm's policy affords full replacement cost coverage for the property in question for damage resulting from hail because hail damage is not expressly excluded from full replacement cost coverage." *Id.* at ¶ 31. They urge that "[t]he policy does not define, limit, or otherwise mitigate full replacement cost coverage for tornado, wind- and/or hail-storm damage outside of 'accidental direct physical loss,'" and "does not specify, condition, define, or limit that full replacement cost coverage in any way, *e.g.*, minimum windspeeds, the type of roof damage, a minimum number of hail strikes per square foot, a minimum size of hail, etc. Rather, all of these ***very real*** limitations exist in State Farm claims handling procedures." *Id.* at ¶ 32.

18.    But, the LaFevers Agency cannot be liable for alleged negligent procurement of policy the form of which does not define hail or elaborate on limitations in a way satisfactory to Plaintiffs because that form Policy was approved by the DOI. Any complaint as to the lawfulness or permissibility of the policy and the marketing of it is not properly before the court. Instead, the DOI is entrusted with the obligation of authorizing the provision of insurance by insurers and of reviewing and approving insurance contracts for sale in Oklahoma—a responsibility that Plaintiffs effectively challenge in complaining about the form policy and its absence of a definition of hail. Okla. Stat. tit. 36, § 3610(A)

("No insurance policy form or application form, where written application is required and is to be made a part of the policy, rider or endorsement form other than surety bond forms and such other insurance policy forms as are hereinafter specifically otherwise provided for shall be issued, delivered, or used unless filed with and approved by the Insurance Commissioner."). The Insurance Commissioner is "charged with the duty of administration and enforcement of the provisions of the Oklahoma Insurance Code[] [and] of any requirements placed on an insurance company pursuant to the Oklahoma Statutes." Okla. Stat. tit. 36, § 307. The Commissioner has "jurisdiction over complaints against all persons engaged in the business of insurance" and must "hear all matters." *Id.* And importantly for this case, the Commissioner is granted specific authority to regulate and "investigate into the affairs of every person engaged in the business of insurance in this state in order to determine whether such person has been or is engaged in any … unfair or deceptive act or practice prohibited by Section 1203 of this article," including "[m]isrepresentations and false advertising of policy contracts." Okla. Stat. tit. 36, §§ 1203-1205. Therefore, to the extent Plaintiffs' claims against the LaFevers Agency are grounded in its role in selling the State Farm form policy authorized by the DOI, they are further subject to dismissal because the DOI has jurisdiction over them. *See Jennings v. Globe Life & Acc. Ins. Co. of Oklahoma*, 922 P.2d 622, 625-26 (Okla. 1996) (finding that the district court did not err in dismissing lawsuit alleging insurance company violated Oklahoma law by paying commissions to its agents in excess of the maximum rate allowed by state regulations because the statute did not allow for private right of action but granted the Commissioner the authority to hear such complaints); *Public Service Co. of Oklahoma v. Norris Sucker*

*Rods*, 917 P.2d 992, 996 (Okla. Civ. App. 1995) (concluding the Corporation Commission was the only forum in which a utility customer could seek relief for a rate dispute); *Walker v. Grp. Health Servs., Inc.*, 37 P.3d 749, 761 (Okla. 2001), *as corrected on denial of reh'g* (Apr. 23, 2001) (observing that the doctrine of primary jurisdiction "comes into play whenever adjudication of the claim calls for resolution of issues which, under a regulatory scheme, are placed within the special competence of an administrative agency" and "[w]hen applicable, the doctrine results in judicial process being suspended pending disposition of the issues referred to an administrative body").

19.    Plaintiffs' Petition further attempts to impose upon an insurance agent a duty to inform insureds of the condition of their property for which there is no legal or industry support at all and which is mooted entirely by the fact that State Farm in fact issued a Policy. They allege State Farm agents should perform "an in-person inspection of the Insured Property prior to the inception of ... coverage and routinely thereafter to verify the condition and attributes of the Insured Property," but "[r]emarkably, State Farm's agents almost never" conduct an inspection, which "means they represent the property's eligibility under State Farm's underwriting rules to both State Farm and the insured recklessly and blindly." Pet., ¶¶ 18-23. They try to tie this duty to inspect to their negligent procurement claim, by alleging that because the LaFevers Agency did not inspect the property, it could not "confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool," "disclose pre-existing damage to the Insured Property," or verify that the property met State Farm's underwriting guidelines and qualified for the Policy. *Id.* at ¶ 63(b). ***This argument is impossible because an insurance policy issued,***

**under which State Farm estimated to replace storm-damaged property, and under which Plaintiffs sue State Farm for benefits. Therefore, the house did satisfy State Farm's underwriting requirements.**

20.    Regardless, this theory presupposes a duty to the insured with regard to underwriting which does not exist. Courts to address the issue are in agreement that an agent owes no underwriting duty or duty to inspect to the insured. *Hall* Order at 8-9 (denying remand where "Plaintiff [did] not provide a legal basis that [the agent] ... had a duty to Plaintiff to" "follow and abide by State Farm's underwriting policies/guidelines; perform all necessary inspections of the Insured Property; ... disclose pre-existing damage to the Insured Property; [and] verify whether ... the Insured Property (including the roof) was in good condition" among other alleged duties); *Wilder* Order at 8-9 (same); *Wiesman* Order at 8-9 (same); *Marino*, 2023 WL 11915691 at *3; *Goebel*, 2023 WL 11883977 at *4; *Gray v. Derderian*, 464 F. Supp. 2d 105, 110 (D. R.I. 2006) (insurer had no duty to inspect insured property); *Hartford Steam Boiler Inspection & Ins. Co. v. Cooper*, 341 So. 2d 665, 668 (Miss. 1977) (same); *Manzella v. Gilbert-Magill Co.*, 965 S.W.2d 221, 229 (Mo. Ct. App. 1998) (refusing to find agent had legal duty to customers to abide by underwriting guidelines in placing coverage); *Salopek, Tr. for Salopek Fam. Heritage Tr. v. Zurich Am. Life Ins. Co.*, 428 F. Supp. 3d 609, 622 (D. N.M. 2019) (same); *Stafford* Order at 7 ("Contrary to plaintiff's suggestions, the Oklahoma cases do not support the idea that an agent is required to personally inspect a premises before binding a policy."); *White* Order at 7-8; *Cline* Order at 7.  This makes sense; insurers conduct underwriting to recognize and reduce their risk, and not as a service to inform insureds of the condition of

their house. *Gray*, 464 F. Supp. 2d at 109. A business model that required the agent or State Farm to attest to the condition of every house insured—which is where Plaintiffs' theory leads—would be impossible to sustain. But to make sure there is no confusion on that point the Policy tells the insureds that State Farm has no obligation to inspect or report on the condition of their property. Policy at 32, Ex. 13. And if State Farm decides to have an inspection, it is performed by a third-party vendor, not the agent. Berthelot Decl., ¶¶ 4-9, Ex. 16; Sample Underwriting Letter, Ex. 17 (advising insureds that "a routine survey … [wa]s being scheduled for [their] home," "[a] representative from a survey company contracted by State Farm [would] be visiting [their] home to complete a survey and take exterior photos," and "State Farm periodically surveys the homes [it] insureds," but the "survey is not a health or safety inspection and is not intended to ensure compliance with laws, codes, or standards that may apply to [their] premises. The decision made by State Farm regarding [their] insurance eligibility does not constitute any warranty regarding such compliance or the condition of [their] premises.").

21.     In a further effort to layer on allegations to create the appearance of a claim, Plaintiffs' Petition is also replete with confusing and irrelevant allegations regarding the agent's alleged calculation of the replacement cost value of their property. *See, e.g.*, Pet., ¶¶ 25, 62-63. That is the obligation of the Plaintiffs and in all events entirely immaterial as there was more than enough coverage to replace Plaintiffs' roof if it was totaled. They allege that "[b]y virtue of the act of marketing, selling, procuring, and binding full replacement cost coverage under the Policy ... [the] Agent independently selected and calculated full replacement cost coverage" (*id.* at ¶ 25(d)), which "did not accurately reflect

the replacement cost of the Insured Property" (*id.* at ¶ 63(a)(iii)). They suggest they are underinsured due to the LaFevers Agency's negligence because the Policy "did not provide full replacement cost coverage to fully restore the Insured Property back to its pre-loss condition." *Id.* at ¶ 63(a)(iv). The Policy makes plain ***it was up to Plaintiffs*** to choose their coverages and limits. Policy at 1, Ex. 13 ("[State Farm] agree[s] to provide the insurance described in this policy … for the coverages you chose."). And the coverage provided by State Farm is "***based on the information [Plaintiffs gave it]***." *Id.* at 1 (emphasis added). Regardless of who selected the amount of insurance, there can be no dispute Plaintiffs had sufficient coverage to replace the roofs of their house and sheds. The Declarations show they had $314,800 in coverage for their "Dwelling" and $31,480 in coverage for "Other Structures." Declarations at 2, Ex. 12. Their contractor submitted an estimate to State Farm to replace the roofs for far less than that—$23,800. Contractor's Estimate, Ex. 15. "So, any issue as to coverage amounts did not lead to any of the damages that Plaintiffs assert via their claim for damage." *Goebel*, 2023 WL 11883977 at *4. *See also Porter*, 2025 WL 1151682 at *4; *Cisneros*, 2025 WL 1151685 at *4; *Barlow*, 2025 WL 1139489 at *4; *Stone* Order at 7-8 (finding insured could not state a claim based on allegations agent failed to undertake an accurate calculation of RCV where a "review of the contract demonstrate[d] that, as is most commonly the case, Plaintiff provided information to State Farm and was involved in selecting his own coverage limits" and "it [wa]s undisputed that Plaintiff's policy provided" enough coverage to replace his roof).

**Plaintiffs' Negligent Misrepresentation Claim Cannot Possibly State a Claim Against the LaFevers Agency for the Same Reasons and More**

22.    Plaintiffs' negligent misrepresentation/constructive fraud claim, premised on the same erroneous facts, is implausible for the same and other reasons. To state a claim for constructive fraud, a plaintiff must allege facts to show (1) defendant owed plaintiff a duty of full disclosure; (2) defendant misstated a fact or failed to disclose a fact to plaintiff; (3) defendant's misstatement or omission was material; (4) plaintiff relied on defendant's material misstatement or omission; and (5) plaintiff suffered damages as a result. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003). None of these elements exist.

23.    In their Petition, Plaintiffs allege "Defendants"—defined as State Farm and the LaFevers Agency (Pet. at 1 n.1)—made multiple misrepresentations and/or omissions that fall into four categories: (1) representations regarding Plaintiffs' eligibility for replacement cost value coverage, including those relating to the completion of inspections, compliance with underwriting guidelines, and good condition of Plaintiffs' house (*id.* at ¶ 73(a)-(c)); (2) representations regarding the calculation of the replacement cost value of Plaintiffs' house (*id.* at ¶ 73(a)); (3) representations regarding the coverage provided by Plaintiffs' Policy (*id.* at ¶ 73(d)-(e)); and (4) representations regarding State Farm's bad-faith claim handling (*id.* at ¶ 73(f)-(g)). They appear to attribute at least some of these statements to the LaFevers Agency but do not say when or where they were allegedly made, who made them, the context in which they were made, or what was said. Many, if not all, of these alleged representations included in an effort to plead a scheme, were not actually

made, as evidenced by Plaintiffs' inability to plead them with particularity as required by Fed. R. Civ. P. 9(b).

24.    Plaintiffs do not allege the LaFevers Agency made **_affirmative_** representations about house condition or replacement cost value calculations. They allege it **_implied_** their roof was in good condition and their coverage "represented 100% of the Insured Property's insurance to value" by "virtue of the act of marketing, selling, procuring, and binding" their Policy. Pet., ¶ 25. Nor is there an allegation the LaFevers Agency made affirmative representations about claim handling and hail determination. *Id.* To the contrary, Plaintiffs allege the LaFevers Agency did not disclose State Farm's alleged scheme to deny claims through a narrow hail definition. Negligent misrepresentation cannot be based on silence or an implied representation alone. Plaintiffs must show the LaFevers Agency owed them "a duty of full disclosure." *Lillard*, 267 F. Supp. 2d at 1113. "This duty could be part of a [] fiduciary duty owed by the defendant to the plaintiff. [It] could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter." *Id.*

25.    The allegations in the Petition do not establish the LaFevers Agency owed Plaintiffs a duty to speak. Plaintiffs do not allege the LaFevers Agency owed them a fiduciary duty, and the law is clear that an insurance agent owes no fiduciary duty to an insured. *See e.g., Pratt v. Safeco Ins. Co. of Am.*, No. CIV-20-93-D, 2020 WL 4735350, at *2 (W.D. Okla. Aug. 14, 2020). In *Pratt v. Safeco*, the court observed "[t]he duty to speak 'may arise if a party selectively discloses facts that create a false impression.' If a false impression is conveyed by disclosing some facts and concealing others, the concealment

is in effect a false representation." *Id.* (citations omitted). As in *Pratt*, Plaintiffs here "do not allege that [the agent] conveyed a false impression by disclosing certain material facts and concealing others." *Id.* Their allegation is it said nothing at all about the condition of their house, replacement cost value calculations, whether the property met underwriting requirements, how State Farm handles claims using a "narrow, and limited definition of what constitutes covered hail damage," and the alleged "Scheme." Pet., ¶¶ 4(a)-(p), 25. "[S]ilence conveyed no false impression to Plaintiffs." *Pratt*, 2020 WL 4735350 at *2. *See also Weisman* Order at 11-12 ("The Court declines to conclude that a reasonable basis for a constructive fraud/negligent misrepresentation claim is an inherent or implied representation attendant to the issuance of an insurance policy. If that were the case, almost no circumstances would exist in which an agent could not be joined as a party to a lawsuit relating to coverage. Accordingly, the Court concludes Plaintiff has not pled facts demonstrating [the agent] made a partial disclosure that gave rise to a duty of full disclosure to Plaintiff."); *Hall* Order at 11-12 (same); *Wilder* Order at 11-12 (same); *Porter*, 2025 WL 1151682 at *4 (finding plaintiffs could not possibly state a claim for negligent misrepresentation where, as here, "Plaintiffs [did] not identify any affirmative statements by [agent] concerning State Farm's claim handling or policy interpretation"); *Cisneros*, 2025 WL 1151685 at *4 (same); *Barlow*, 2025 WL 1139489 at *4 (same); *Stafford* Order at 6 ("[Plaintiff] has not alleged ... any factual allegations of a partial disclosure by [agent].... The court concludes [plaintiff] cannot show any duty to speak on the part of [the agent]."); *Cline* Order at 6 (same); *White* Order at 6 (same).

26.    The element of reliance is missing, too. In their Petition, Plaintiffs impermissibly conflate an agent's limited role in policy issuance ("binding") and the insurer's subsequent underwriting and carrying out of the policy terms. To the extent an agent's act of "binding" a policy could serve as a representation of the condition of Plaintiffs' house (it cannot), it would be a representation to State Farm that, based on the information gathered from the insured during the application process, the property is worthy of consideration for coverage—not a representation to the insured. "Binding authority" does not mean the agent had authority to "bind" (require) State Farm to issue a policy or carry it out in a particular way. "'[B]inding authority' [] refer[s] to the insurance industry concept of an insurance agent's ability to temporarily 'bind' coverage, which occurs prior to the insurer's issuance of a policy." *Peerless Ins. Co. v. M.A.S.S. Servs.*, No. 806-CV-250T-27TGW, 2007 WL 2916386, at *7 n.11 (M.D. Fla. Oct. 5, 2007). The agent's "binding authority" is limited to issuance of a binder, which is valid for a short period, known as a "look and see period" to give the insurance company time to perform underwriting and determine whether the property is an acceptable risk. Okla. Stat. tit. 36, § 3622(B); *Phipps v. Union Mut. Ins. Co.*, 150 P. 1083, 1084 (Okla. 1915) (agent's "power is confined to taking applications for insurance, which, when taken, are to be forwarded to the company for its approval or rejection").

27.    There is no dispute that State Farm issued the Policy on which Plaintiffs sue. Pet., ¶ 27. Any binder issued by the agent expired upon Policy issuance. Okla. Stat. tit. 36, § 3622(B) ("No binder shall be valid beyond the issuance of the policy with respect to which it was given."). Therefore, if Policy issuance constitutes a representation about the

condition of Plaintiffs' house or satisfaction of underwriting requirements (which is Plaintiffs' flawed theory) that can only be a representation by State Farm, not the agent.

28.    The same is true of policy renewals. Plaintiffs suggest the LaFevers Agency made implied representations about the condition of their property, replacement cost value, and conformance with underwriting guidelines through the mere act of renewing the policy, but the law and the Policy provide otherwise. An agent plays no role in the renewal of a policy. Rather, as the Declarations state, the policy "renew[s] automatically subject to the premiums, rules, and forms in effect for each succeeding policy period." Declarations at 1, Ex. 12; Berthelot Decl., ¶ 10, Ex. 16. Consequently, Oklahoma statute requires **_insurers_**, as State Farm did here, to give insureds "a written renewal notice that shall include new premium, new deductible, new limits or coverage at least thirty (30) days prior to the expiration date of the policy. If the insurer fails to provide such notice, the premium, deductible, limits and coverage provided to the named insured prior to the change shall remain in effect ...." Okla. Stat. tit. 36, § 3639.1(B). *See also* Homeowners Available Coverage Notice and Renewal Declarations, Ex. 12; Berthelot Decl., ¶ 10, Ex. 16. Thus, as with the issuance of a policy, to the extent the mere act of renewing a policy can be a representation, it would be a representation by State Farm, not the LaFevers Agency.

29.    In addition, Plaintiffs' theory the agent has a duty to inspect for the insureds' benefit is squarely negated by the Policy, which expressly states that State Farm has no obligation to "make inspections and surveys of the insured location at any time," provide insureds with "reports on conditions," or "recommend changes." Policy at 32, Ex. 13. While State Farm sometimes elects to have an inspection conducted, it does so for its own

use in evaluating whether to insure a new property or continue to insure an existing property, and through a third-party vendor, not agents. Berthelot Decl., ¶¶ 3-5, Ex. 16; Sample Underwriting Letter, Ex. 17.

30.     Plus, Plaintiffs could not have reasonably relied upon any alleged misrepresentations about their Policy because they received a copy—evidenced by the screenshots of the Policy included in their Petition. *See, e.g.,* Pet., ¶¶ 31, 33. It has long been the law that insureds have a duty "to read and know the contents of the polic[y]" before they accept it and an applicant "who accepts [a policy] the provisions of which are plain, clear, and free from all ambiguity, is chargeable with knowledge of the terms and legal effect." *Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*, 69 P. 936, 937 (Okla. 1902); *see also Country Gold, Inc. v. State Auto Prop. & Cas. Ins. Co.*, No. CIV–14–1398–D, 2015 WL 431638, at *4 (W.D. Okla. Feb. 2, 2015) (dismissing constructive fraud claim in part because there was no dispute plaintiff received policy and thus could not have reasonably relied upon any misrepresentations about it); *Siddique v. Western Heritage Ins. Co.*, No. CIV–14–456–SPS, 2015 WL 2451734, at *4-5 (E.D. Okla. May 21, 2015) (same).

31.     Further fatal to the claim is that none of these alleged misrepresentations *caused* the damages of which Plaintiffs complain. The only injury alleged by Plaintiffs for any claim is that "[a]s a result of the ***Defendants'*** [conduct]"—not the LaFevers Agency alone—"Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, and ordinary or garden variety harm of anger, stress, worry, [and] physical and emotional suffering." Pet., ¶ 78. *See also id.* at ¶ 57 (bad faith claim); *id.* at

¶ 65 (negligent procurement claim). ***Plaintiffs suffered no damage from the alleged misrepresentations because none are the reason for the claim decision.*** The only "deprivation of monies" identified (or even plausible) was State Farm's refusal to pay to replace three slopes of the roof of Plaintiffs' house, while paying to replace the back slope, as well as the roofs of two sheds. That decision had nothing to do with inspections being completed, whether the property met all "underwriting guidelines," or whether Plaintiffs had sufficient coverage to replace their roof. *See Wiesman* Order at 12 ("Plaintiff's damages stem from State Farm's calculation of the repairs to his property, not from Plaintiff's lack of coverage related to the above alleged misrepresentations."); *Hall* Order at 12-13 (same); *Wilder* Order at 13 (same); *Rain Drop*, 2025 WL 582562 at *5 (denying remand where plaintiff was "unable to make out a causal nexus between [the agent's] actions at the procurement stage and Plaintiff's alleged prejudice at the coverage determination stage," reasoning that "[a]ny disagreement about the extent of the hail damage suffered, the decision to repair rather than replace the roof, or the adequacy of the replacement shingles, [wa]s with State Farm alone). *See also Steinkamp*, 2023 WL 11920886 at *3; *Marino*, 2023 WL 11915691 at *3; *Goebel*, 2023 WL 11883977 at *3; *Porter*, 2025 WL 1151682 at *4; *Cisneros*, 2025 WL 1151685 at *4; *Barlow*, 2025 WL 1139489 at *4; *Gamble*, 2025 WL 1848818 at *3; *Weichbrodt*, 2025 WL 1848819 at *3; *Stafford* Order at 7 (concluding plaintiff could not show alleged representations "resulted in detriment to her"); *Cline* Order at 7 (same); *White* Order at 8 (same); *Stone* Order at 8-9 (finding insured could not possibly state a claim against agent because alleged loss was

not caused by agent). This case is the same; the LaFevers Agency caused no injury to Plaintiffs.

32.     In all events, the facts pled by Plaintiffs make plain that the alleged representations were true. Plaintiffs' house *did* satisfy underwriting and qualified for replacement cost coverage. The Policy State Farm issued, under which it estimated to repair or replace storm-damaged property, and under which Plaintiffs sue and seek benefits, *is* an RCV policy. *See Smith*, 2014 WL 1382488 at *2 (rejecting claim agent misrepresented property would be replaced without any deduction for depreciation where policy provided for replacement without depreciation if the insured repaired or replaced the property). Plaintiffs' Policy covers hail and wind damage, as well. Pet., ¶ 31 ("State Farm's replacement cost policy functions like an 'all risk' policy: that is, if the policy does not expressly exclude a loss, then the policy should afford full replacement cost coverage for the loss pursuant to the loss clause. Thus, State Farm's policy affords full replacement cost coverage for … hail"); Policy, § II, p.12, Ex. 13; Declarations at 3, Ex. 12. Plaintiffs admit State Farm estimated to repair/replace portions of their property damaged in the storm; they just allege State Farm should have paid to replace more of it, including the entire roof of their house. Pet., ¶ 40(k)-(l), (q). Inspections are not always required by State Farm to issue a policy (but when State Farm decides to conduct an inspection, it is performed by a third party and not agents). Policy at 32, Ex. 13; Berthelot Decl., ¶¶ 3-5, Ex. 16. And, as established above, Plaintiffs had more than sufficient coverage to replace the damage alleged by their contractor. *Stafford* Order at 7 ("[E]ven if [the agent's] acts constituted the

representations asserted, the court concludes [plaintiff] cannot show that the representations were untrue."); *Cline* Order at 7; *White* Order at 8.

33.    The fraud-based claim against the LaFevers Agency is further non-cognizable because it is premised upon opinions and alleged promises by the LaFevers Agency of future performance, and by another entity—State Farm. As to alleged schemes involving claim handling and application of policy terms in claim handling (Pet., ¶ 4), the LaFevers Agency is not a claims adjuster and has no obligation to guess at future claims by Plaintiffs and inform them of what State Farm might do with that future claim. *See Goebel*, 2023 WL 11883977 at *4. Thus, the LaFevers Agency cannot be liable for not having spoken about a claim that has not occurred, might never occur and might be decided in Plaintiffs' favor if it did. Plaintiffs' theory is squarely negated by the law that "for a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980); *CMI Roadbuilding v. SpecSys*, No. CIV-18-1245-G, 2021 WL 2189190, at *3 (W.D. Okla. May 28, 2021) (same requirement for constructive fraud); *Briggs v. State Farm*, No. 3:14CV16-DPJ-FKB, 2014 WL 1355627, at *3-4 (S.D. Miss. Apr. 7, 2014) (finding no reasonable basis for success against agent on claim for negligent misrepresentation where complaint accused him of promising the insurer "would fairly and accurately assess any damage and adjust any claim the Plaintiffs might have … and pay to [] Plaintiffs the cost to repair or replace the Plaintiffs' home"). Further, any representations by the LaFevers Agency about State Farm's past claim handling decisions would be conveying an adjuster's opinion. *See Cupit v. Dancu*

*Chemical Co.*, 316 P.2d 593, 596 (Okla. 1957) (holding insurer claim decision is an opinion and not "misrepresentation or concealment of facts"). "Fraud may not be predicated on a mere expression of opinion." *Eckert v. Flair Agency, Inc.*, 909 P.2d 1201, 1204 (Okla. Civ. App. 1995).

34.     The only specific statements Plaintiffs attribute to the LaFevers Agency are copied and pasted from the LaFevers Agency's website and do not speak to representations regarding replacement cost coverage, inspections, or State Farm's claim handling. Pet., ¶ 17. Notably, Plaintiffs do not allege that they relied on the website in purchasing their Policy or that they even read the content on the website. Once Plaintiffs quote the webpage in ¶ 17 of their Petition, they make no further mention of it, suggesting its content is not the basis of their constructive fraud claim. To the extent it is, the statements are, at most, an expression of opinion or "puffing" and not constructive fraud as a matter of law. *Hall v. Edge*, 1989 OK 143, ¶ 11, 782 P.2d 122, 126 ("[A] seller's opinion which is nothing more than 'puffing' will not give rise to an action based on misrepresentation."); *Wyrick v. Campbell*, 1918 OK 1, ¶ 7, 170 P. 267, 268 (concluding trial court erred in overruling demurrer where allegations in petition to support claim of fraud amounted to nothing more than opinions); *Pine Tel. Co. v. Alcatel-Lucent USA, Inc.*, No. CIV–11–353–JHP, 2014 WL 318331, at *8 (E.D. Okla. Jan. 29, 2014), *rev'd on other grounds*, 617 F. App'x 846 (10th Cir. 2015) (finding allegations in complaint that defendant promised its telecommunications equipment and technology would "'outperform offerings' by competitors, 'provide [plaintiff] the advantage of offering better service to [its] customers' and 'allow [plaintiff] to gain significant operational expense savings' and 'capture a large

share of the wireless data market'" were statements of opinions or promises of future performance and could not sustain a claim of fraudulent inducement).

**The Petition Reflects Fraud in the Pleading of Jurisdictional Facts**

35.    As the chart attached as Exhibit 18 reflects, this is one of numerous cases filed by Plaintiffs' attorneys, alleging insurance agents (Oklahoma residents) from several insurers (not Oklahoma residents) made the same omissions and implied misrepresentations and committed substantially similar underwriting failures, each of whom are then sued when the insurer denies or partially denies an insurance claim. The allegations are factually implausible and legally wrong. Recently, Judge Joe Heaton expressly recognized that fraud in substantively identical pleadings and dismissed fraudulently joined agents. His opinions have been cited with approval by Judge DeGiusti. *Rain Drop,* 2025 WL 582562 at *3. The same outcome is warranted here. While Plaintiffs' counsel have revised and rearranged their form petition and attempted to "water down" the very specific language that every agent purportedly used as pled in their many other filings, the substantive duplication, implausibility and import remains unchanged. Plaintiffs have no plausible claim against the LaFevers Agency. *Cf. Daily v. USAA Casualty Ins. Co.*, No. CIV-14-0550-HE, 2014 WL 12729172, at *2 (W.D. Okla. Nov. 19, 2014) (reasoning Plaintiffs' counsel's "use of identical pleadings in multiple similar cases" alone cast doubt on their ability to state a claim against the defendants). Plaintiffs' counsel have chosen to baselessly accuse the LaFevers Agency—along with dozens of other hard-working Oklahoma agents, whose careers and livelihoods depend on their good name—of negligence and fraud, solely so they can destroy diversity and litigate against State Farm

27

in a more favorable forum. This is not how the legal system is supposed to work, nor will the law or facts permit it.

36.    The mistakes in this new form petition, showing an absence of good faith in the filings, are now also piling up. For example, in *Methvin v. State Farm*, *Moore v. State Farm*, *Stone v. State Farm*, and *Dressel v. State Farm*, Plaintiffs' counsel have pled fraudulent conduct by agents that cannot have occurred because the agent was not involved when the policy issued (Nickey Lee in *Methvin v. State Farm*, Jim Moore in *Moore v. State Farm*, and Steve Swann in *Dressel v. State Farm*) or when it issued or renewed (the LaFevers Agency in *Stone v. State Farm*). *See* Notice of Removal, ¶ 9, *Methvin v. State Farm*, No. CIV-25-345-PRW (W.D. Okla. March 24, 2025), ECF No. 1; Notice of Removal, ¶ 9, *Moore v. State Farm*, No. CIV-25-181-G (W.D. Okla. Feb. 11, 2025), ECF No. 1; Notice of Removal, ¶¶ 10-11, *Stone v. State Farm*, No. CIV-25-07-D (W.D. Okla. Jan. 3, 2025), ECF No. 1; Notice of Removal, ¶ 9, *Dressel v. State Farm*, No. CIV-25-860-HE (W.D. Okla. Aug. 4, 2025), ECF No. 1. And they have now twice sued the wrong agent entirely, accusing that agent of fraud with no good-faith basis to do so. *See* Pls.' Mot. for Leave to File First Am. Compl., *Warren v. State Farm*, No. CIV-25-85-JD (W.D. Okla. April 4, 2025), ECF No. 26 (admitting the agent sued was "not the subject of Plaintiffs' claims" and seeking to amend complaint to remove agent as a defendant and name a different agent as a defendant); Pl.'s Mot. for Leave to File First Am. Compl., *Hope v. State Farm*, No. CIV-25-323-D (W.D. Okla. Apr. 3, 2025), ECF No. 17 (admitting "Plaintiff mistakenly named and served State Farm's agent Ryan Williams" and seeking leave to file

amended complaint to remove Mr. Williams as a defendant and name a different agent in place of Williams as a defendant).

37.    Consent to removal is only required from "defendants who have been properly joined and served." 28 U.S.C. § 1446(b)(2)(a). Thus, consent by the LaFevers Agency is not required.[1] However, to the extent consent is required, the LaFevers Agency consents to removal.

38.    Plaintiffs claim to be entitled to recover "[m]onetary relief aggregating in excess of $250,000.00." Pet. at 55. Therefore, the amount in controversy requirement imposed by 28 U.S.C. § 1332 is met.

40.    Because the properly joined parties are diverse and the amount in controversy exceeds $75,000, this is the kind of action of which the United States District Courts have original jurisdiction because of diversity of citizenship and sufficiency of amount in controversy.

41.    The Oklahoma Insurance Commissioner was served with the Summons and Petition on September 24, 2025. *See* Letter from Maria Torres to State Farm, Ex. 19. This Notice of Removal is, therefore, timely under the provisions of 28 U.S.C. § 1446(b).

---

[1] Indeed, as an improperly joined party, the LaFevers Agency is not subject to this Court's jurisdiction and Plaintiffs' claims against it must be dismissed. *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004); *Hicks v. FG Mins. LLC*, No. CIV-19-203-TDD, 2020 WL 2104928, at *6 (E.D. Okla. May 1, 2020); *Jonnada v. Liberty Ins. Corp.*, No. CIV-19-456-D, 2019 WL 6119233, at *5 (W.D. Okla. Nov. 18, 2019).

42.    A copy of the docket sheet and copies of all process, pleadings and orders served upon State Farm in the aforementioned state action are attached hereto, marked as Exhibits 1-11 and 19, and made a part hereof.

Respectfully submitted,

*/s/Timila S. Rother*

TIMILA S. ROTHER, OBA #14310
PAIGE A. MASTERS. OBA #31142
**CROWE & DUNLEVY**
A Professional Corporation
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, I electronically transmitted the foregoing document to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| **Reggie Whitten** | rwhitten@whittenburragelaw.com |
| **Michael Burrage** | mburrage@whittenburragelaw.com |
| **Blake Sonne** | bsonne@whittenburragelaw.com |
| **Hannah Whitten** | hwhitten@whittenburragelaw.com |
| **John Sanders** | jsanders@whittenburragelaw.com |
| **Jake Denne** | jdenne@whittenburragelaw.com |

I further certify that, a true and correct copy of this Notice of Removal was sent to the Oklahoma County Court Clerk for filing.

/s/*Timila S. Rother*
Timila S. Rother

6083524